# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **DALILA GARCIA-LOPEZ, et al.** | § | **PLAINTIFFS** |
| | § | |
| v. | § | Civil Action No. 1:08CV1397-LG-RHW |
| | § | |
| **BELLSOUTH TELECOMMUNICATIONS, INC.,** | § | |
| d/b/a AT&T, and **WAYNE HARDY** | § | **DEFENDANTS** |

## CONSOLIDATED WITH

| | | |
|---|---|---|
| **JOSE URESTI** | § | **PLAINTIFF** |
| | § | |
| v. | § | Civil Action No. 1:09CV135-LG-RHW |
| | § | |
| **BELLSOUTH TELECOMMUNICATIONS, INC.,** | § | |
| d/b/a AT&T, and **WAYNE HARDY** | § | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART AT&T'S MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** is the Motion for Summary Judgment [123] filed by Defendant Bellsouth Telecommunications, Inc., doing business as AT&T (hereinafter "AT&T). The plaintiffs have filed a response, and AT&T has filed a Reply. Upon reviewing the submissions of the parties and the applicable law, the Court finds that the Motion for Summary Judgment should be granted to the extent that the plaintiffs seek to hold AT&T vicariously liable for the actions of Wayne Hardy. In addition, the Court finds that AT&T is entitled to summary judgment regarding Hugo Lima's claims and all of the plaintiffs' lost wages and/or earning capacity claims, negligent training, and punitive damages claims. In all other respects, the Motion is denied.

## FACTS AND PROCEDURAL HISTORY

On October 27, 2005, at approximately one o'clock in the morning, an AT&T truck being driven by Wayne Hardy rear-ended a pick-up truck being driven by Julio Jose Uresti and occupied by Dalila Garcia-Lopez, Ana Sorto-Chicas, Jessie Ochoa (a/k/a Jessie Valentin-Pacheco), and Santos Cesar Medrano. The accident occurred near the Gulfport-Highway 49 South Exit on Interstate 10 in Gulfport, Mississippi. At the time of the accident, Sorto was sitting in the middle of the seat inside the cab of the truck driven by Uresti, and Garcia was sitting by the passenger-side door. (Ex. E at 29). Ochoa and Medrano were riding underneath a blue tarp in the bed of the pick-up truck, along with the plaintiffs' belongings. (Ex. G at 82). All of the plaintiffs were traveling from Houston, Texas, to Biloxi, Mississippi, in hopes of finding clean-up and recovery work following Hurricane Katrina.

AT&T employee Wayne Hardy, who normally worked in Alabama, was temporarily assigned to the Mississippi Gulf Coast to assist with Katrina-related repairs. (Ex. C at 15, 22). He was living at a Hampton Inn in Gulfport and was permitted to use an AT&T-owned truck while he was in the area. He did not bring a personal vehicle to the Coast and was not required to do so by AT&T.

AT&T's 30(b)(6) representative testified that employees who were working away from home were only permitted to travel short distances in their vehicles to get meals, go to Wal-Mart, and do laundry. (Ex. D at 12). These instructions were given to traveling employees both before they left their normal reporting station and when they arrived at their temporary reporting location. (Ex. D at 14-15). In addition, AT&T's written substance abuse policy provided that employees could not drive vehicles on company business while under the influence of alcohol.

(Ex. H).

Hardy had been living in Gulfport for almost one month when the accident occurred. (Ex. C at 22). On the day preceding the accident, Hardy worked from approximately 7:00 a.m. until approximately 7:15 p.m. in Bay St. Louis. (*Id.* at 44; Ex. 3 to Ex. C). During his lunch break, he purchased Jack Daniels whiskey at a Bay St. Louis liquor store. After his shift ended, Hardy went to a female friend's house in Pascagoula and spent approximately five hours there, drinking whiskey. (*Id.* at 50-51). He was in the process of returning to his hotel and was undisputedly intoxicated when the accident occurred. (*Id.* at 51, 36). He was charged by police with driving under the influence, because his blood alcohol level exceeded the legal limit. In a statement provided to AT&T following the accident, he said that the accident caused him to realize that he had had an alcohol problem for approximately two or three years. (Ex. 3 to Ex. C). He entered a treatment program after the accident and continued to participate in the program until November 22, 2005, when he was terminated by AT&T. (Ex. C at 38).

Garcia, Sorto, Ochoa, and Hugo Lima filed a lawsuit against AT&T and Hardy on October 17, 2008, and the case was removed to this Court. Lima originally claimed that he was married to Garcia and asserted a loss of consortium claim. However, Garcia admitted at her deposition that she has never been married to Lima but is married to a man who lives in Guatemala. (Ex. E at 12). Counsel for AT&T claims that Lima also admitted this, but a copy of Sorto's deposition was inadvertently provided to the Court instead of Lima's deposition. Nevertheless, the plaintiffs have not addressed the argument that Lima's claims should be dismissed and have not provided any evidence that contradicts Garcia's testimony. Medrano, the other occupant of the truck, never filed a lawsuit against AT&T. Uresti filed a separate lawsuit

against AT&T and Hardy on October 27, 2008, which was consolidated with Garcia's lawsuit on September 3, 2009.

Counsel for the plaintiffs was permitted to withdraw their representation of Ochoa, because they believe he was deported and they do not have his current address. Ochoa was given thirty days to obtain substitute counsel or advise the Court of his intention to proceed pro se. The copy of the Order that was sent to Ochoa was returned as undeliverable, and Ochoa has not contacted the Court as required by the Court's Order. As a result, an Order to Show Cause why Ochoa's claims should not be dismissed will be entered and will be mailed to Ochoa at his last known address.

The remaining plaintiffs have asserted the following claims against AT&T: negligence and gross negligence pursuant to the doctrine of respondeat superior, negligent hiring, negligent training, and negligent supervision. Uresti has also filed a negligent entrustment claim. They seek the following damages: property damage, physical pain and suffering, past and future medical expenses, past and future disability, mental anguish and emotional distress, loss of enjoyment of life, lost wages and/or earning capacity, loss of use, and punitive damages. AT&T has filed the present motion, seeking summary judgment concerning all of the claims filed against it.

## DISCUSSION

Any party to a civil action may move for summary judgment upon a claim, counterclaim, or cross-claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law. FED. R. CIV. P. 56. A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on

file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Celotex Corp.*, 477 U.S. at 324-25. The non-moving party may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

## I. HUGO LIMA'S LOSS OF CONSORTIUM CLAIM AGAINST AT&T

AT&T requests dismissal of Lima's claim for loss of consortium arising out of Garcia's injuries, since Garcia has admitted that she and Lima are not married. (Ex. E at 12). The plaintiffs have not provided any argument or evidence that would tend to show that Lima and Garcia are in fact married. As a result of the lack of any evidence that Garcia and Lima are married, the Court finds that Lima's claims against AT&T must be dismissed. *See Wal-Mart Stores, Inc. v. Frierson*, 818 So. 2d 1135, 1147 (¶42) (Miss. 2002) (noting that a spouse seeking compensation for loss of consortium must show that he suffered damages arising out of the other's injuries).

## II. RESPONDEAT SUPERIOR

The plaintiffs seek to hold AT&T vicariously liable for Hardy's alleged negligence, based on the doctrine of respondeat superior.

> Under the doctrine of respondeat superior, an employer may be liable for the acts of his employee if said acts are done in the course of employment and in furtherance of the employer's business . . . . However, if an employee deviates from that work or goes on a "frolic" of his own, then the employer-employee relationship is temporarily suspended.

*Otts v. Lynn*, 955 So. 2d 934, 940-41 (¶24) (Miss. Ct. App. 2007) (citing *Children's Med. Group,*

*P.A. v. Phillips*, 940 So. 2d 931, 935 (¶13) (Miss. 2006)). The Mississippi courts have adopted Section 228 of the Restatement (Second) of Agency, which provides:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>     (a) it is of the kind he is employed to perform;
>     (b) it occurs substantially within the authorized time and space limits;
>     (c) it is actuated, at least in part by a purpose to serve the master, and
>     (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

*Phillips*, 940 So. 2d at 935 (¶13). The Mississippi Supreme Court has further explained the scope of employment inquiry as follows:

> The inquiry is not whether the act in question, in any case, was done, so far as time is concerned, while the servant was engaged in the master's business, nor as to mode or manner of doing it . . . *but whether, from the nature of the act itself as actually done, it was an act done in the master's business, or wholly disconnected therefrom by the servant, not as servant, but as an individual on his own account.* . . .
>     . . . .
>
> Moreover, in determining whether a particular act is committed by a servant within the scope of his employment, the decisive question is not whether the servant was acting in accordance with the instructions of the master, *but, was he at the time doing any act in furtherance of his master's business?* If a servant, having completed his duty to his master, then proceeds to prosecute *some private purpose of his own*, the master is not liable; but if the servant, while engaged about his master's business, merely deviates from the direct line of duty to accomplish some personal end, the master's responsibility may be suspended, but it is re-established when the servant resumes his duty.

*Gulledge v. Shaw*, 880 So. 2d 288, 295 (¶18) (Miss. 2004) (internal citations omitted). In *Gulledge*, the Court held that a bank was not vicariously liable for its employee's misconduct in notarizing a forged document outside the presence of the signatory for a friend, even though the document was notarized at the bank during the employee's shift and serving as a notary public

was part of the employee's duties at the bank. *Gulledge*, 880 So. 2d at 296 (¶20). The Court noted: "When Shaw notarized the application, she ceased to be an actor on the [b]ank's behalf and instead became a private actor seeking to accomplish her own private purpose." *Id.*

The plaintiffs argue that AT&T should be held liable for the alleged negligence of Hardy because Hardy's conduct was incidental to work that was authorized. They assert that Hardy's work with AT&T required him to be away from home for an extended period of time and to live in a hotel. They also note that Hardy was permitted to drive the AT&T vehicle from the job site to his hotel and for short distances to get meals, do laundry, and shop. (Ex. D at 13-14). They rely on a workers' compensation case, *Smith & Johnson, Inc. v. Eubanks*, 374 So. 2d 235, 238 Miss. 1979), for the proposition that "while lodging in a hotel, or preparing to eat, or while going to or returning from a meal, [a traveling representative of the company] is performing an act incident to his employment, unless he steps aside from his employment for personal reasons." The Court in *Eubanks* held that the employee was acting within the course of his employment at the time he was involved in a car accident, because he was on out-of-town business for his employer that required him to stay in a hotel. *Eubanks*, 374 So. 2d at 238. At the time of the accident, the employee was on his way to have dinner with a cousin. *Id.* at 236, 238.

However, in the present case, Hardy was not going to get a meal when the accident occurred. He was driving from a female friend's house where he had consumed enough whiskey to render him intoxicated. The plaintiffs rely heavily on the fact that Hardy was traveling to his hotel at the time of the accident, and state: "Hardy had permission to use the truck in at least two counties and he had permission to drive it to his hotel from work, *which is what he was doing* [when the accident occurred]." (Pls.' Mem. at 10) (emphasis added). Hardy clearly was not

traveling from the worksite to his hotel when the accident occurred. It is undisputed that he made a five-hour detour after work, became intoxicated, and then chose to drive a company vehicle to his hotel. Doing laundry, shopping for toiletries, and eating meals could be viewed as incidental to out-of-town employment, because those acts are necessities for a person working away from home. But, drinking whiskey, driving while intoxicated, and socializing with a girlfriend are not in any way necessary activities. Rather, these are personal, optional endeavors that were not incidental to his employment.

The plaintiffs next argue that Hardy's conduct was simply a minor deviation that did not take his conduct outside the scope of employment. The minor deviation rule was adopted by the Mississippi Supreme Court in *Travelers Indemnity Co. v. Watkins*, 209 So. 2d 630 (Miss. 1968), and it pertained to coverage under an omnibus clause in an insurance policy. Where the use made by an employee is within the time, geographic, and purpose limitations of the permission it does not constitute a gross deviation. *Broadway v. Kelley Bros. Contractors, Inc.*, 803 So. 2d 1155, 1156 (¶2) (Miss. 2000). The Court finds that Hardy's conduct did not constitute a minor deviation. He was returning to the hotel over five hours after his shift ended, following an unnecessary detour that involved socializing and drinking whiskey.

The plaintiffs also argue that Hardy's trip back to his hotel benefitted AT&T but do not explain how AT&T may have benefitted. Presumably, they believe that the return to the hotel permitted Hardy to go to work the next day. However, there is no evidence that Hardy could not have gone to the work the next day if he had remained at the friend's house rather than returning to the hotel. It is unclear how an employee's decision to drive a company vehicle while intoxicated could benefit his employer.

Finally, the plaintiffs argue that AT&T is liable for the plaintiffs' injuries regardless of any vicarious liability because AT&T self-insures its company vehicles. The plaintiffs have not provided any evidence that supports this contention, and there is no mention of self-insurance in the plaintiffs' complaints. Furthermore, "[a] direct action may only be brought against an insurance company when there is an issue of coverage." *Hudson v. Palmer*, 977 So. 2d 369, 377 (¶15) (Miss. Ct. App. 2007). No issues of coverage have been alleged in this lawsuit and the insurance policy has not been provided to this Court. Thus, the Court cannot make a determination regarding whether AT&T self-insured the vehicle or whether coverage is owed in this circumstance. This Court's decision in this case only pertains to the claims asserted in the plaintiffs' complaints and should have no bearing on any coverage issues that may arise at a later date.

For the reasons stated previously, the Court finds that Hardy was not acting within the course and scope of his employment when the accident with the plaintiffs occurred. As a result, the Court finds that AT&T is not liable pursuant to the doctrine of respondeat superior.

### III. THE PLAINTIFFS' NEGLIGENT HIRING, NEGLIGENT ENTRUSTMENT, NEGLIGENT SUPERVISION, and NEGLIGENT TRAINING CLAIMS

All of the plaintiffs also allege that AT&T is independently liable for its negligence in hiring, training, and supervising Hardy. Uresti also alleges that AT&T negligently entrusted the company vehicle to Hardy. In its Motion and supporting Memorandum, AT&T has provided very little argument in support of its request for summary judgment as to these claims. It only argues that there is no evidence to support these claims, and that the evidence shows that Hardy received education and training about Department of Transportation Rules and Company policies

prohibiting driving a company vehicle while intoxicated. (AT&T Mem. at 15). AT&T also points out that Hardy admitted that he knew it was inappropriate to drink and drive a company vehicle. (*Id.* at 16). No additional argument is made regarding these claims.

A party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact in its Motion and supporting Memorandum. *See Celotex Corp.*, 477 U.S. at 325. Although this Court has reviewed all of the summary judgment pleadings and supporting evidence, it would be improper for the Court to search through the supporting evidence in an attempt to locate evidence that supports arguments not specifically made by AT&T.

Furthermore, Court notes that there is evidence that could support negligent hiring, supervision, and entrustment claims. For example, Hardy had an alcohol problem for which he obtained extensive treatment after the accident. (Ex. C at 38; Ex. 3 to Ex. C). AT&T has not provided any affidavits or testimony addressing whether it had knowledge or should have had knowledge of that problem. Furthermore, the record reflects that Hardy had previous accidents while on the job, but no information has been provided concerning the cause of those accidents, other than Hardy's contention that one was his fault and the other was not. (Ex. 3 to Ex. C; Ex. C at 74). Thus, the Court finds that AT&T did not meet its initial burden concerning the following claims: negligent hiring, negligent entrustment, and negligent supervision.

Since AT&T's arguments only address Hardy's training, the Court will only consider whether AT&T is entitled to summary judgment regarding that claim. "To prevail on a claim of negligence at trial, the plaintiff has the burden of proving (1) duty, (2) breach of duty, (3) causation, and (4) damages, by a preponderance of the evidence." *Stricklin v. Medexpress of*

*Miss., LLC*, 963 So. 2d 568, 571 (¶8) (Miss. Ct. App. 2007). Thus, the plaintiffs must demonstrate that AT&T breached a duty by failing to properly train Hardy and that the breach of duty caused the plaintiffs' damages.

AT&T's written substance abuse policy provided that employees could not drive vehicles on company business while under the influence of alcohol. (Ex. H). At his deposition, Hardy testified that he was not aware of any limitations or restrictions on the ability to use AT&T vehicles for personal use. (Ex. C at 29). He also stated that he did not remember receiving any training or directives regarding the use of AT&T vehicles. (*Id.* at 30). However, he testified that he was required to obtain Class A and Class B commercial driver's licenses. (*Id.* at 83-84). While answering the written examination that he took in order to obtain one of those licenses, he correctly answered that a driver should not drink alcohol within four hours of driving or going on duty. (*Id.*; Ex. 8 to Ex. C). He also acknowledged that he attended AT&T's program on drug and alcohol testing regulations and that he was familiar with AT&T's policies on drug use and alcohol misuse. (Ex. C at 81; Ex. 7 to Ex. C). Hardy also admitted in a written statement that he knew that it was inappropriate to drive an AT&T vehicle while intoxicated. (Ex. 3 to Ex. C). As a result, the Court finds that there is no genuine issue of material fact that Hardy was trained not to drive an AT&T vehicle while intoxicated. As a result, the Court finds that AT&T is entitled to judgment as a matter of law concerning the plaintiffs' negligent training claim.

**IV. THE PLAINTIFFS' LOST WAGES AND LOSS OF EARNING CAPACITY CLAIMS**

AT&T argues that it is entitled to judgment as a matter of law concerning the plaintiffs' lost wages and loss of earning capacity claims, because undocumented aliens are not lawfully permitted to be present or employed in the United States. *See Hoffman Plastic Compounds, Inc.*

*v. N.L.R.B.*, 535 U.S. 137, 148-49 (1984). In *Hoffman Plastic*, the Court overturned the National Labor Relations Board's award of back pay to a person who was neither authorized to be present nor employed in the United States, because awarding back pay to illegal aliens runs counter to policies underlying the Immigration Reform and Control Act (IRCA). *Hoffman Plastic*, 535 U.S. at 149. The Court noted that awarding back pay to a person who is not permitted to work in the United States would trivialize the immigration laws and encourage future violations. *Id.* at 150. In order to be authorized to work in the United States, IRCA provides that an alien must have a valid social security card or "other documentation evidencing authorization of employment in the United States which the Attorney General finds, by regulation, to be acceptable for purposes of this section." 8 U.S.C. §1324a(b)(1)(C).

AT&T argues that the plaintiffs cannot legally work in the United States, because they have admitted that they do not have social security cards and have admitted they have never applied for social security cards. (Ex. E at 18; Ex. F at 12; Ex. G at 13). Thus, AT&T asserts that the plaintiffs are seeking damages for work they could not have legally performed in the United States.

The plaintiffs do not dispute *Hoffman Plastic*'s applicability to this case, and they have not disputed the assertion that they are not permitted to legally work in the United States. However, they argue that they are entitled to lost wages and loss of earning capacity for work they could have performed in their native countries. They have not submitted any caselaw that supports this assertion.

All of the plaintiffs testified at their depositions that they live in either Texas or Louisiana. (Ex. E at 10; Ex. F at 7; Ex. G at 6-7, 12). None of the plaintiffs have expressed any

intention to return to their native countries or produced any evidence to support their lost wages and loss of earning capacity claims. For example, Garcia and Sorto claim that they are entitled to $500 a week in lost wages for the next twenty years. (Ex. K at 4, 12; Ex. L at 4, 12; Ex. N at 4-5; Ex. O at 4-5). They have never filed tax returns, were paid cash for all previous work, and claim that they do not remember the name of their past employers. (*Id.*) Uresti claims that he is entitled to approximately $40,000 in lost wages, but he has never filed a tax return and states that he was paid cash. (Ex. G at 25; Ex. M at 10; Ex. P at 4-5).

The Court finds that the plaintiffs' lost wages and loss of earning capacity claims are barred by IRCA and *Hoffman Plastic*, because any work performed by the plaintiffs in the United States would be illegal. The Court further finds that any claim for lost wages or earning capacity whether pertaining to the United States or the plaintiffs' native countries would be entirely speculative. *See Potts v. Miss. Dep't of Transp.*, 3 So. 3d 810, 814 (¶11) (Miss. Ct. App. 2009) (holding that proof of lost or diminished earning capacity must be established by substantial evidence and cannot be left to mere conjecture).

## V. THE PLAINTIFFS' PUNITIVE DAMAGES CLAIMS

AT&T also argues that the plaintiffs' punitive damages claims must be dismissed, because Hardy violated company policy when he drove a company vehicle while intoxicated. "Mississippi law does not favor punitive damages; they are considered an extraordinary remedy and are allowed 'with caution and within narrow limits.'" *Warren v. Derivaux*, 996 So. 2d 729, 738 (¶27) (Miss. 2008) (quoting *Life & Cas. Ins. Co. of Tenn. v. Bristow*, 529 So. 2d 629, 622 (Miss. 1988)). "Punitive damages are only appropriate in the most egregious cases so as to discourage similar conduct and should only be awarded in cases where the actions are extreme."

*Paracelsus Health Care Corp. v. Willard*, 754 So. 2d 437, 442 (¶20) (Miss. 1999) (citing *Wirtz v. Switzer*, 586 So. 2d 775, 783 (Miss. 1991)).  Miss. Code Ann. §11-1-65 provides:

> Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.

The defendant's conduct must include some element of aggression, insult, malice, or gross negligence that evidences a ruthless disregard for the rights of others in order to justify an award of punitive damages.  *Bradfield v. Schwartz*, 936 So. 2d 931, 936 (¶17) (Miss. 2006).  The totality of the circumstances and the aggregate conduct of the defendant must be considered when determining whether punitive damages are appropriate.  *Willard*, 754 So. 2d at 442.

In the present case, the Court finds that there is no evidence of any gross negligence or reckless conduct on the part of AT&T.  Furthermore, AT&T correctly argues that it cannot be held liable for Hardy's alleged gross negligence and reckless conduct in driving while intoxicated.  Hardy knowingly violated AT&T's alcohol policy and state law; thus, AT&T is not liable for punitive damages for his conduct.  *See Gamble v. Dollar Gen. Corp.*, 852 So. 2d 5, 15 (¶37) (Miss. 2003) (holding that an employer could not be held vicariously liable for punitive damages where the employee admitted that she had violated company policy in pursuing and assaulting a shoplifter, despite the fact that the employee's training was deficient).  Therefore, the Court finds that AT&T is entitled to summary judgment as to the plaintiffs' punitive damages claims.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion for Summary Judgment [123] filed by Defendant Bellsouth Telecommunications, Inc., doing business as

AT&T, is **GRANTED** as to the claims of Plaintiff Hugo Lima and all of the plaintiffs' lost wages and/or earning capacity claims, negligent training claims, and punitive damages claims. The Motion is also granted to the extent that the plaintiffs seek to hold AT&T vicariously liable for the actions of Wayne Hardy.  The Motion is **DENIED** in all other respects.

**SO ORDERED AND ADJUDGED** this the 7th day of May, 2010.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE